HENRY C. BRUEGGE AND ALMA D. BRUEGGE v. MASTERTEMP, INC.

No. 8629SC613

(Filed 16 December 1986)

**Negligence § 29.3— house fire—repairs to furnace pipe—evidence of negligence sufficient for jury**

> There was sufficient evidence that defendant's negligence was a proximate cause of a house fire to submit the case to the jury where an employee of defendant serviced and replaced a six-inch elbow pipe on plaintiffs' furnace; the elbow was located at the exhaust port and was within nine inches of a floor joist; the correct way to connect the elbow would be to attach the elbow to the exhaust port over the flue collar and insert a minimum of three sheet metal screws, then screw the elbow to a straight section of flue pipe; support from above was required for a pipe over two or three feet in length; defendant's employee could not recall anything about the work he performed on plaintiffs' furnace; the testimony of a fire inspector established that there were no screw holes or rivet holes in the elbow at the point where it should have been connected to the straight section of pipe; a volunteer fireman testified that he did not recall observing any support coming from above the vent or the straight section of pipe; there was further testimony of a burning area adjacent to the furnace and that the flue pipe connected to the furnace was detached from the elbow and had dropped down from the elbow; a lieutenant with the fire department testified that the most deeply charred wood was in the area around and above where the elbow was detached and that the charring became less severe the further he looked away from the elbow; two floor joists were burned in two, with the joist directly above the elbow the more severely burned; and the fire lieutenant and an expert witness testified that the origin of the fire was in the area of the elbow.

APPEAL by plaintiff from *Hyatt, Judge.* Judgment entered 15 January 1986 in Superior Court, RUTHERFORD County. Heard in the Court of Appeals 28 October 1986.

On 30 September 1983, plaintiffs, Henry C. Bruegge and Alma D. Bruegge, filed their complaint against defendant, Mastertemp, Inc. Plaintiffs alleged that on 25 November 1981 and 22 January 1982, agents for defendant were negligent in the repair of plaintiffs' furnace, to wit: they "failed to properly connect or failed to take reasonable measures to prevent the detachment of a six-inch elbow pipe, which carried hot exhaust gasses from the furnace, from a six-inch flue pipe which carried the hot exhaust gasses to a chimney to be vented outdoors." It was further alleged by plaintiffs that as a result of the alleged negligence of defendants, the six-inch elbow became detached on 24 January 1982,

which allowed hot exhaust gases to escape and start a fire which damaged plaintiffs' property. Plaintiffs claimed damages in the amount of $34,726.17. On 25 October 1983, plaintiffs amended their complaint to include 29 December 1981, as an additional date when defendant's agents undertook the repair of their furnace.

On 9 November 1983, defendant answered plaintiffs' complaint denying all allegations of negligence and asserting that plaintiffs' complaint failed to state a claim upon which relief may be granted. A jury trial was requested by defendant.

On 13 January 1986, this cause was called for trial. At the close of plaintiffs' evidence, defendant moved the court for a directed verdict on the basis that there was no evidence that defendant's negligence was the proximate cause of the fire. The trial court, after hearing arguments of the parties, granted defendant's motion for a directed verdict. Plaintiffs appeal.

*Morris, Golding, Phillips & Cloninger, by William C. Morris, III and Jeff Durham, for plaintiff appellants.*

*Collie & Wood, by George C. Collie and Charles M. Welling, for defendant appellee.*

JOHNSON, Judge.

The ultimate issue we must decide is whether plaintiffs' evidence, when considered in the light most favorable to them, was sufficient for submission to the jury. *See, e.g., Wallace v. Evans,* 60 N.C. App. 145, 298 S.E. 2d 193 (1982). The purpose of a motion for directed verdict was stated in *Wallace, supra,* as follows:

> Settled principles establish that the purpose of a G.S. 1A-1, Rule 50(a) motion for directed verdict is to test the legal sufficiency of the evidence to take the case to the jury and to support a verdict for plaintiffs; that in determining such a motion the evidence should be considered in the light most favorable to plaintiffs and the plaintiffs should be given the benefit of all reasonable inference; and that the motion should be denied if there is any evidence more than a scintilla to support plaintiffs' prima facie case in all its constituent elements.

*Wallace, supra,* at 146, 298 S.E. 2d at 194. Evidence that raises a mere possibility or conjecture is insufficient to withstand a motion for a directed verdict. *Ingold v. Carolina Power & Light Co.,* 11 N.C. App. 253, 181 S.E. 2d 173 (1971). However, in ruling upon a motion for a directed verdict, "[t]he evidence in favor of the non-movant must be deemed true, all conflicts in the evidence must be resolved in his favor and he is entitled to the benefit of every inference reasonably to be drawn in his favor." *Summey v. Cauthen,* 283 N.C. 640, 647, 197 S.E. 2d 549, 554 (1973).

The asserted basis for defendant's motion for a directed verdict was that there was not a scintilla of evidence that there was any negligence by defendant that proximately caused the fire. The trial court ruled that there was no evidence that defendant's negligence, if any, proximately caused the fire. Our review of the record on appeal shows that there was sufficient evidence that defendant's negligence was a proximate cause of the fire to submit the case for a jury determination.

Plaintiffs' evidence established that in November 1981, Don Jenkins, an employee of defendant, serviced and replaced a six-inch elbow pipe of plaintiffs' furnace. This elbow, located at the exhaust port, was within nine inches of a floor joist. Testimony by Mr. Jenkins established that the correct way to replace the elbow was to attach the elbow to the exhaust port over the flue collar and insert a minimum of three sheet metal screws therein. Once this procedure is complete, the elbow is then attached to a straight section of flue pipe and screwed together. Support for a pipe from above is required if the pipe is over two or three feet in length. The importance of the elbow and pipe being secure is that gases are thereby prevented from escaping. Mr. Jenkins could not recall anything about the work he performed on plaintiffs' furnace. However, plaintiffs established, through the testimony of a fire investigator, that there were no screw holes or rivet holes in the elbow at the point where it should have been connected to the straight section of the flue pipe. One of the volunteer firemen who responded to the fire testified that he did not recall observing any support coming from above the vent or straight section of the pipe. Mr. Smith testified that as he was extinguishing the fire in a crawl space he observed a burning area adjacent to the furnace, and that the flue pipe connected to the furnace was detached from the elbow and had dropped down from

the elbow. Mr. Marshall Baynard, a lieutenant with the Forest City Fire Department, testified that during his investigation he entered the crawl space and observed that the most deeply charred wood in plaintiffs' home was the area around and above the area where the elbow detached from the exhaust system that was going to the chimney. He observed that the farther away he looked from the elbow, the less severe the charring was. Mr. Baynard further testified two floor joists in the crawl space were burned in two, but the joist that was directly above the elbow area was more severely burned. Mr. Baynard's opinion about the origin of the fire was that "there was a possible gap occurred [sic] between the elbow and the pipe that went to the chimney that let the super heated gases escape right in under the floor joists and sub-flooring and caused the wood to dry out and actually ignite itself." Plaintiffs also presented the expert testimony of Dr. Charles Manning. Dr. Manning testified that "the origin of the fire was in the area above and just in front of the elbow that came out of the furnace, that the flue gases are normally delivered from the furnace to the chimney."

Cases involving allegations of negligence as the cause of a fire typically have less direct evidence of causation. Plaintiffs appropriately rely upon *Fowler-Barham Ford, Inc. v. Indiana Lumbermen's Mutual Ins. Co.*, 45 N.C. App. 625, 628, 263 S.E. 2d 825, 827-28, *disc. rev. denied*, 300 N.C. 372, 267 S.E. 2d 675 (1980), for the following principles:

> Ordinarily, there is no direct evidence of the cause of a fire, and therefore, causation must be established by circumstantial evidence. It is true that there must be a causal connection between the fire and its supposed origin, but this may be shown by reasonable inference from the admitted or known facts. The evidence must show that the more reasonable probability is that the fire was caused by the plaintiffs or an instrumentality solely within their control.

*Indiana Lumbermen's Mutual Ins. Co., supra*, at 628, 263 S.E. 2d at 827-28 (citations omitted). In defendant's brief it is contended that "[T]he plaintiffs simply did not produce sufficient evidence, either direct or circumstantial, to permit a jury to make an inference that Defendant's failure to place sheet metal screws in the joint formed by the elbow and the flue pipe and upon that in-

ference make an inference that the elbow flue pipe separated for the lack of screws." We disagree; there was sufficient evidence to raise a question for the jury to decide. *See Patton v. Dail*, 252 N.C. 425, 114 S.E. 2d 87 (1960). "[I]t is well established that if the facts proved establish the more reasonable probability that the defendant has been guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence." *Fitzgerald v. Railroad*, 141 N.C. 530, 534, 54 S.E. 391, 393 (1906). In the case *sub judice*, the trial court improvidently granted defendant's motion for a directed verdict at the conclusion of plaintiffs' evidence. We hold that plaintiffs presented sufficient evidence of defendant's actionable negligence to withstand defendant's motion for a directed verdict. Plaintiffs' remaining Assignments of Error are not likely to recur; therefore, we need not address them.

For the reasons stated hereinabove, the judgment is

Reversed.

Judges ARNOLD and EAGLES concur.